IN THE U. S. DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2017 AUG -9  P 1:31
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| **PATRICIA MASARIK,** | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 2:17-cv-541 |
| v. | § § | |
| **F.C. OF ALABAMA, INC. d/b/a INTREPID U.S.A., INC.,** | § § § § | JURY DEMAND |
| Defendant. | § | |

## COMPLAINT

Plaintiff, Patricia Masarik, for her Complaint against Defendant, F.C. of Alabama, Inc., hereafter "Intrepid U.S.A.," alleges and states as follows:

### PARTIES

**A.  Plaintiff**

1.  Plaintiff Patricia Masarik is a female resident and citizen of Deatsville, Elmore County, Alabama. She was hired by Intrepid U.S.A. in December of 2013 and was employed as a Sales Account Executive in and around the Montgomery Alabama metro area until her termination in September of 2016.

## B. Defendant

2. Intrepid U.S.A. is a home healthcare provider in the Montgomery Alabama metro area with its principal place of business at 6600 France Ave. S., STE 510, Edina, Minnesota 55435.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 1343 because this action is brought pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended.

4. Venue is proper in this District pursuant to 42 U.S.C. § 2000(e)-5(f)(3) and Section 28 U.S.C. § 1391 because the unlawful employment practices were committed and the employment records were maintained, in whole or in part, in this District.

5. Plaintiff has fulfilled all conditions precedent to the institution of this action. Plaintiff timely filed her charge of discrimination and retaliation within 180 days of the occurrence of the last discriminatory act. Plaintiff timely filed her lawsuit within 90 days of her receipt of her "Right to Sue" letter from the EEOC.

## FACTS AND STATEMENT OF CLAIMS

6. Plaintiff began working for Defendant as a Sales Account Executive in December of 2013.

7. Plaintiff originally worked directly under and reported to a regional sales director named Andy Smith, however, about 1.5 years after her hire date Mr. Smith resigned to care for his daughter who had a serious health condition.

8. While working for Mr. Smith Plaintiff's job performance met or exceeded Intrepid U.S.A.'s expectations.

9. Mr. Smith was replaced by Greg Charlton and Plaintiff then directly reported to him.

10. Unlike Mr. Smith, Greg Charlton was a misogynist.

11. Shortly after he was hired, he terminated a woman sales account executive that was Plaintiff's co-worker and replaced her with a male named Gerald "Scott" Ramey.

12. Without even knowing how Scott Ramey was going to perform, Greg Charlton advised Plaintiff that he intended to promote Ramey into a management position.

3

13. Greg Charlton never asked Plaintiff or any of the other female sales account executives if they were interested in a management job and ultimately Greg Charlton did promote Mr. Ramey.

14. Scott Ramey's sales numbers were less than Plaintiff's numbers. Despite this fact, Greg Charlton harassed Plaintiff about her job performance, namely her numbers, where Scott Ramey's performance was equal or worse and he experienced no such action at the hands of Greg Charlton.

15. As a result, Plaintiff made a complaint to corporate against Mr. Charlton alleging gender based discrimination. Plaintiff complained to Jennifer Thedford, the director of human resources, Ben Fisher the regional director of operations, and Paul Foster the chief executive officer.

16. In reporting her complaint of discrimination, Plaintiff met or exceeded the reporting protocol outlined in Defendant's handbook.

17. Within its position statement in response to Plaintiff's EEOC charge, Defendant admits during Plaintiff's employment she alleged she experienced discriminatory treatment.

18. After complaining internally and no corrective action occurred, Plaintiff filed an EEOC charge in March of 2016.

4

19. Shortly after Greg Charlton learned Plaintiff had filed an EEOC charge alleging he had discriminated against her, Greg Charlton met with Plaintiff to increase her sales goals.

20. Greg Charlton did the same to a Birmingham sales account executive named Tiffany Kemp after she filed an EEOC charge similar to Plaintiff's also making allegations of discrimination against Greg Charlton.

21. Ms. Kemp filed her charge before Plaintiff. When Greg Charlton learned Ms. Kemp had complained of discrimination he increased her sales goals and then terminated her within days of doing so before she had an opportunity to try to meet the new goals. After Plaintiff filed her EEOC charge, additional women came forward and did the same also alleging they experienced discriminatory treatment at the hand of Greg Charlton.

22. Approximately 21 days after changing Plaintiff's sales goals, Defendant advised Plaintiff that she must limit her sales territory to a smaller geographic area. Approximately 21 days after that, Plaintiff was provided a final warning with regard to her job performance, i.e. sales numbers.

23. Roughly thirty days thereafter Plaintiff was terminated.

24. During the meeting in which she was terminated, Regional Director of Operations Ben Fisher advised Plaintiff she was being let go due to the "situation." Plaintiff took his comment to mean she was being let go due to the degradation of her relationship with Greg Charlton, at no fault of her own, after the filing of her EEOC charge. In this meeting there was no discussion of her job performance. When she inquired as to what "situation," Ben Fisher would not respond.

25. In its Response to Plaintiff's EEOC charge, contrary to Ben Fisher's representation, Defendant alleges Plaintiff was terminated due to job performance. Defendant also alleges an investigation of Plaintiff's complaint was performed, but that the Defendant found it lacked merit.

26. These statements are mere pretext to cover up Defendant's discriminatory and retaliatory intent as Defendant's stated reason for terminating Plaintiff changed, and also because after the conclusion of the EEOC's investigation, including onsite visits, Greg Charlton was terminated as a result, along with Connie Jemison the office administrator who was complicit in helping Greg Charlton retaliate against Plaintiff. Director of Human Resources Jennifer Thedford was terminated shortly after Plaintiff.

27. Lastly, and most persuasive is the fact that the same month Plaintiff was terminated for not meeting sales goals, her sales numbers were more than twice that of her male co-worker Scott Ramey.

28. As stated above, Scott Ramey's numbers were routinely less than Plaintiff's numbers and they were significantly less than Plaintiff's numbers the last month she was employed. He was not disciplined or terminated based on his job performance. Accordingly, Plaintiff's job performance could not have been the true reason for her termination.

29. Given Greg Charlton's misogynistic history and the proximity of Plaintiff's problems with Greg Charlton, including her termination, to her complaints and filing of an EEOC charge, it is apparent Greg Charlton illegally retaliated against Plaintiff and Defendant's upper management were aware of his actions and complicit.

## COUNT I
### GENDER DISCRIMINATION

30. Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 29 as though set forth here in full.

31. Plaintiff was subjected to unlawful gender based discrimination and harassment because of her gender by a male superior.

32. This discrimination and harassment included exposing Plaintiff to disparate and adverse conditions of employment as compared to Gerald "Scott" Ramey who was neither punished for lesser job performance compared to Plaintiff's performance and who was ultimately promoted based on his gender as a male.

33. U.S.A. Intrepid knew or should have known of the discriminatory actions to which Plaintiff was exposed, but it failed to take reasonable action to prevent and/or stop the illegal conduct of its male managers.

34. As a result, Plaintiff suffered a loss of enjoyment of life, mental anguish and emotional distress, and she is entitled to an award of compensatory damages.

35. Defendant and its male employees committed the above-described discriminatory acts with malice and/or reckless indifference to the rights of Plaintiff and therefore she is entitled to an award of punitive damages.

## COUNT II
### RETALIATION

36.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 35 as though set forth here in full.

37.     In response to Plaintiff's internal and external complaints of gender discrimination, her sales goals were arbitrarily increased, her performance was overly scrutinized compared to that of her male counterpart, and she was involuntarily discharged in violation of the anti-retaliation provisions of Title VII.

38.     Plaintiff has suffered lost wages, lost benefits, embarrassment, humiliation, damage to her reputation, mental distress, emotional and physical pain and anguish, all as a consequence of this unlawful conduct.

## DAMAGES

39.     Plaintiff has suffered lost wages, lost benefits, embarrassment, humiliation damage to her reputation, mental distress, emotional and physical pain and anguish, all as a consequence of Defendant's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

   A.    Declare the Defendant violated her rights under Title VII;

B. Enjoin Defendant from further violations of Title VII;

C. Award Plaintiff equitable relief under Title VII, including, but not limited to, back pay (including interest or an appropriate inflation factor and an enhancement to offset any adverse tax consequences associated with lump sum receipt of back pay, instatement/reinstatement and front pay if appropriate;

D. Award Plaintiff compensatory and punitive damages;

E. Award Plaintiff costs including but not limited to reasonable attorneys' fees, experts' fees, and other costs and expenses incurred to prove her claims.

### JURY DEMAND

Plaintiff demands a trial by struck jury.

Dated: August 8, 2017

Respectfully submitted,

*/s/ Robert J. Camp*
**ROBERT J. CAMP**
rcamp@wcqp.com
**WIGGINS, CHILDS, QUINN & PANTAZIS, LLC**
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205) 314-0500 – Phone

(205) 254-1500 – Facsimile

*Plaintiff's Counsel*

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

F.C. of Alabama, Inc. d/b/a Intrepid USA, Inc.
CT Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104

_____
OF COUNSEL